**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE FARM FIRE & CASUALTY COMPANY   ) | |
|                                 Plaintiff,   ) | |

STATE FARM FIRE & CASUALTY COMPANY )
       )
    Plaintiff,    )
       )
v.         )   Case No.
       )
JOHN C. WIGER, DDS.   )
**Serve: 42697 Red Shale Ct.** )
   **Ashburn, VA 20148-4107** )
       )
    Defendant.   )

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW State Farm Fire & Casualty Company ("State Farm"), by counsel and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et. seq.*, and files this Complaint for Declaratory Judgment:

## NATURE OF THE CASE

1. This is an action for declaratory judgment in which State Farm seeks a determination of its rights and obligations under three separate polices of insurance issued by it to the defendant, John C. Wiger, DDS ("Dr. Wiger"):  Homeowners insurance policy no. 46-LN-3270-8, attached hereto as **Exhibit 1** (the "Homeowners Policy"),  Personal Liability Umbrella Policy no. 46-EP-6455-0 attached hereto as **Exhibit 2** (the "Umbrella Policy") and Medical Office policy no. 96-42-3860-4 attached hereto as **Exhibit 3** (the "Medical Office Policy").

2. An actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties and obligations under the above-referenced insurance policies.

3. Specifically, State Farm seeks a declaratory judgment that there is neither a duty to defend nor a duty to indemnify Dr. Wiger under any or all of the above-referenced policies

with respect to a lawsuit filed against him by Top Nova Orthodontics, LLC ("Top Nova") and Azita Abassi-Hafshejani, DDS ("Dr. Abassi") in the Circuit Court for Loudoun County Virginia on or about May 6, 2019, in which monetary damages in excess of $3,500,000 are sought from Dr. Wiger (*Top Nova Orthodontics, LLC et al v. Wiger, John C., DDS.* Case No. CL19-523-00, hereinafter referred to as the "Underlying Lawsuit").  A true and correct copy of the Complaint in the Underlying Lawsuit is attached hereto as **Exhibit 4** (the "Underlying Complaint").

## PARTIES

4.    State Farm is an Illinois corporation with its principal place of business located in Bloomington, Illinois.  State Farm is licensed to do business as an insurance company in the Commonwealth of Virginia.

5.    Dr. Wiger is a Virginia resident and is the defendant in the Underlying Lawsuit.

6.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 as complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.   State Farm is an Illinois corporation with its principal place of business in Bloomington, Illinois.  Dr. Wiger is a  resident of Virginia.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

### The Underlying Lawsuit

8.      The Underlying Lawsuit stems from an alleged business dispute arising out of a contract for the sale/purchase of the assets of Dr. Wiger's Loudoun County, Virginia dental practice by Top Nova and Dr. Abassi. **Ex. 4, ¶4.**

9.      The sale/purchase agreement was entered into on or about May 28, 2016. **Ex. 4**, ¶7

10.     In the Underlying Complaint, Top Nova and Dr. Abassi allege that in the sale/purchase agreement Dr. Wiger agreed: (a) to sell all of the assets his dental practice to them, **Ex. 4**, ¶ 8, (b) to abide by the terms of a non-compete agreement, **Ex. 4**, ¶ 9, (c) that Top Nova and Dr. Abassi did not accept responsibility for any liabilities of  Dr. Wiger or his former practice,   **Ex. 4**, ¶ 10, (d) to use his best efforts to integrate Dr. Abassi into the local dental community and to transition the patients of his practice to the care and treatment of Dr. Abassi, **Ex. 4**, ¶ 11, (d) and (e) to introduce his patients to Dr. Abassi. **Ex 4.**, ¶ 12.

11.     Top Nova and Dr. Abassi allege Dr. Wiger breached his agreement with them by accepting advance payments from numerous patients but failing to disclose or turn over those payments as required by the contract. **Ex. 4**, ¶¶ 13, 14, 28,  (Count I).

12.     Top Nova and Dr. Abassi alleged the acts set forth in paragraph 11 above occurred prior to the closing of  the asset sale entered into on May 28, 2016. **Ex. 4**, ¶¶ 13, 14

13.     Top Nova and Dr. Abassi allege Dr. Wiger also breached his agreement with them by openly engaging in a pattern of behavior intended to sabotage "the plaintiff's" relationship with the patients by belittling and undermining Dr. Abassi to the patients, **Ex. 4**, 33, (Count II),  and to other dental professionals, **Ex. 4**, ¶38, (Count III), and by discouraging other

dental professionals from referring patients to the new practice conducted by Dr. Abassi and Top Nova. **Ex. 4**, ¶ 39, Count III.  Top Nova and Dr. Abassi further allege Dr. Wiger did so by: (a) openly engaging in a concerted effort to discredit Dr. Abassi in communications with patients of the practice, **Ex. 4**, ¶ 15,  (b) encouraging staff to demand raises in pay and/or resign once Dr. Abassi took over the practice, **Ex. 4**, ¶ 16, (c) disparaging Dr. Abassi to other dental professionals and discourage them from referring patients to her, **Ex. 4**, ¶ 17, (d) arranging to have his wife (the former office manager of the practice) intercept Dr. Abassi's mail and steal checks, **Ex. 4**, ¶ 18, (e) uploading a ransomware virus to the office computer system and thereby effectively shutting down Dr. Abassi's practice and necessitating expensive system repairs, **Ex. 4**, ¶ 19, (f) arranging with one of his former staff members to spy on Dr. Abassi and provide proprietary business information about her practice to him, **Ex. 4**, ¶ 20, (g) starting an online forum on the Broadlands HOA website to defame and disparage Dr. Abassi by, among other things, posting messages falsely stating that he had closed his practice because Dr. Abassi had driven him out of business and removing any messages that were favorable or in the defense of Dr. Abassi. **Ex. 4**, ¶¶ 21, 22, 23.

14.     Top Nova and Dr. Abassi alleged the acts described in paragraph 13(a)-(f) above occurred within sixty days of closing of the asset sale dated May 28, 2016.  **Ex. 4**, ¶¶ 15-20.

15.     Top Nova and Dr. Abassi alleged the acts described in paragraph 13(g) above began in August, 2016. **Ex. 4**, ¶¶ 21, 22, 23, and continue as ongoing defamation against the plaintiff.  **Ex. 4**, ¶¶ 49, 50.

16.     Top Nova and Dr. Abassi allege that Dr. Wiger defamed them by publishing the following statements:  "Top Nova has closed and is no longer there," **Ex. 4**, ¶ 44 and Top Nova and "Dr. Abassi drove Dr. Wiger out of business."  **Ex. 4**, ¶ 45 (Count IV).

17.     Top Nova and Dr. Abassi allege Dr. Wiger the defamatory statements set forth in the paragraphs 44 and 45 of the Underlying Complaint were (a) false and known to be false at the time they were made, **Ex. 4**, ¶46, (b) made with the intent to deter clients from going to the plaintiff's practice for dental care, **Ex. 4**, ¶47, (c) made with actual malice and with the intent to harm them in their trade or business. **Ex. 4**, ¶¶ 48, 52.

18.     Top Nova and Dr. Abassi allege that the actions specified in paragraphs 11, 13 and 16 above also constitute a conspiracy to injure them in their trade or business.  **Ex. 4**, ¶¶ 53-60, (Count V).

19.     Top Nova and Dr. Abassi allege that the actions specified in paragraphs 11, 13 and 16 above also constitute tortious interference with a business expectancy.  **Ex. 4**, ¶¶ 61-67 (Count VI).

20.     Top Nova and Dr. Abassi allege that all of Dr. Wiger's actions were committed intentionally and knowingly and with the specific intent to inflict harm. **Ex. 4**, ¶¶ 33, 38, 43, 47, 48, 52, 54, 60, 64, 67.

21.     There are no allegations in the Underlying Complaint that Dr. Wiger acted negligently or that he unintentionally inflicted injury or harm.

22.     As a consequence of the conduct alleged in the Underlying Complaint, Top Nova and Dr. Abassi claim: (a) they were deprived of $3,953.20 for tangible assets not turned over to them as required by their contract with Dr. Wiger, **Ex. 4**, ¶29, (b) "loss of business" and damage to Dr. Abassi's "professional reputation," **Ex. 4**, ¶¶ 34, 40, 51, 59, 66, and (c) damage to Dr. Abassi's "personal reputation," **Ex. 4**, ¶51, 59, 66.

### Notice to State Farm

23.     The Underlying Complaint was filed on May 6, 2019.

24.     Posted service of the Underlying Complaint was obtained on Dr. Wiger on or about May 14, 2019.

25.     Dr. Wiger retained counsel to defend him in the Underlying Lawsuit.

26.     Dr. Wiger, by counsel, filed a motion to extend the time limit for responding to the Underlying Complaint on or about June 4, 2019.

27.     Dr. Wiger, by counsel, filed a demurrer to the Underlying Complaint on or about June 18, 2019.

28.     Top Nova and/or Dr. Abassi filed a motion for default judgment on June 20, 2019 to which Dr. Wiger, by counsel, responded with a memorandum in opposition on or about June 25, 2019.

29.     Dr. Wiger, by counsel, received an order denying the motion for default judgment in the Underlying Lawsuit that was entered on or about July 12, 2019.

30.     Dr. Wiger, by counsel, received a pretrial scheduling order that was entered in the Underlying Lawsuit on or about August 5, 2019.

31.     Dr. Wiger, by counsel, filed a counterclaim in the Underlying Lawsuit on or about August 7, 2019.

32.     Dr. Wiger, by counsel, counsel received an order that was entered on or about August 9, 2019 setting the Underlying Lawsuit for a three day jury trial beginning on June 16, 2020.

33.     Between August 9, 2019 and April 6, 2020, Dr. Wiger, by counsel, received or filed no less than thirty (30) motions, pleadings, notices and orders in the Underlying Lawsuit.

34.     Dr. Wiger, by counsel, received a motion for continuance of the June 16, 2020 trial date in the Underlying Lawsuit.

35.     Dr. Wiger, by counsel, noticed the deposition of Dr. Abassi in the Underlying Lawsuit on or about April 6, 2020.

36.     Dr. Wiger, by counsel, amended the notice of deposition for Dr. Abassi and noticed the deposition of an individual by the name of McCleod on or about April 8, 2020, in the Underlying Lawsuit.

37.     On or about April 17, 2020, Dr. Wiger received, by counsel, a Motion *in Limine* filed by Top Nova and/or Dr. Abassi in the Underlying Lawsuit.

38.     On or about April 24, 2020, Top Nova and/or Dr. Abassi filed a motion for protective order, to which Dr. Wiger, by counsel, filed a pleading in opposition on or about April 27, 2020 in the Underlying Lawsuit.

39.     On or about May 5 and 6, 2020, Dr. Wiger received, by counsel, certificates of discovery filed by Top Nova and Dr. Abassi in the Underlying Lawsuit.

40.     By letter dated May 15, 2020, Dr. Wiger provided his first notice of the Underlying Lawsuit, or the events alleged therein, to State Farm. A true and accurate copy of that letter is attached hereto as **Exhibit 5.**

41.     Prior to notifying State Farm of the of the Underlying Lawsuit, or the events alleged therein, the deposition of Dr. Wiger and two other witnesses had been taken, **Ex. 5**, p. 1, Dr. Wiger had received reems of patient records and related documents from Dr. Abassi and Top Nova, **Ex. 5**, p. 2, Dr. Wiger had responded to significant discovery requests, **Ex. 5**, p. 2, and significant documentation had been received in response to multiple subpoena *duces tecums* to nonparties, **Ex. 5**, p. 2, Dr. Wiger, by counsel, had interviewed nearly 30 potential witnesses, **Ex. 5**, p. 2, and had discussions with his expert witness. **Ex. 5**, p. 2.

42.     Prior to May 15, 2020, Dr. Wiger did not forward to State Farm any of the pleadings, notices, orders or other documents referenced in paragraphs 20-36 above.

43.     Dr. Wiger stated, by counsel, that he waited nearly one year after the date of the Underlying Complaint's filing to notify State Farm of the lawsuit and the events alleged there in because:

> Dr. Wiger simply did not know that coverage might apply. It was not until May 2020, a date when Dr. Wiger's colleague suggested to Dr. Wiger that coverage ,may apply through Dr. Wiger's insurance policy, that Dr. Wiger realized insurance coverage may apply. Immediately after this conversation, Dr. Wiger contacted State Farm and spoke to a representative. Within twenty-four (24) hours of such call, on May 14, 2020, Dr. Wiger filed his claim with State Farm. In essence, as soon as Dr. Wiger discovered that coverage may be applicable, Dr. Wiger took immediate action.

**Ex. 5**, p. 2.

**The Homeowners Policy**

44.     State Farm issued the Homeowners Policy, policy no. 46-LN-3270-8, effective from June 23, 2015 to June 23, 2016, designating John C. Wiger as a "Named Insured." **Ex. 1**.

45.     The Homeowners Policy has a Personal Liability limit of $500,000.

46.     The Homeowners Policy was issued in Virginia.

47.     The Homeowners Policy provides the following liability coverage:

**SECTION II – LIABILITY COVERAGES**

**Coverage L – Personal Liability**

If a claim is made or a suit is brought against an **insured**[1] for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1.     pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.     provide a defense at our expense by counsel of our choice …

---

[1] Terms in bold print are specifically defined in the polices.

48.     The Homeowners Policy defines "occurrence" as "an accident … which first results in a. **bodily injury** or b. **property damage** during the policy period ....".

49.     The Homeowners Policy defines "bodily injury" in terms of "physical injury, sickness, or disease to a person …".

50.     The Homeowners Policy defines "property damage" in terms of "physical damage to or destruction of tangible property, including loss of use of this property …".

51.     The Homeowners Policy provides the following liability coverage exclusions:

**SECTION II – EXCLUSIONS**

1. Coverage L and Coverage M do not apply to:

   a. **bodily injury** or **property damage** which is either expected or intended by the **insured**;

   b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** …

52.     The Homeowners Policy defines "business" as "a trade, profession or occupation."

53.     The Homeowners Policy contains the following provisions imposing certain duties upon an insured:

**SECTION II – CONDITIONS**

3. **Duties After Loss**. In case of an accident or **occurrence** the **insured** shall perform the following duties that apply.  You shall cooperate with us in seeing that these duties are performed.

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and insured;

      (2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

      (3) names and addresses of any claimants and available witnesses;

    b.   immediately forward to us every notice, demand, summons or other process relating to the accident or occurrence …

6.   **Suit Against Us**. No action shall be brought against us unless there has been compliance with the policy provisions …

**The Umbrella Policy**

54.    State Farm issued the Umbrella Policy, policy no. 46-EP-6455-0, effective from February 12, 2016 to February 12, 2017, designating John Wiger as a  "Named Insured." Ex. 2. **Ex. 2**.

55.    The Umbrella Policy has a Personal Liability limit of $2,000,000.

56.    The Umbrella Policy was issued in Virginia.

57.    The Umbrella Policy provides the following liability coverage:

**COVERAGE L – PERSONAL LIABILITY**

If a claim is made or suit is brought against an **insured** because of a **loss** for which the insured is legally liable and to which this policy applies, **we** will pay on behalf of the **insured**, the damages that exceed the **retained limit**. The most **we** will pay for such **loss** is the Coverage L Limit of Liability, as shown on the declarations page, regardless of the number of insureds who may be liable, claims made, or persons injured.

**Defense**

If a suit is brought against any **insured** for damages because of a **loss** to which this policy applies, **we** will provide a defense to the insured at our expense by counsel of our choice when the basis for the suit is a **loss** that is not covered by any other insurance policy but is covered by this policy ...

58.    The Umbrella Policy defines "loss" as:

    a.   an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or

    b.   the commission of an offense which first results in **personal injury** during the policy period. A series of similar or related offenses is considered to be one **loss**.

59.    The Umbrella Policy defines "bodily injury" in terms of "physical injury, sickness, or disease to a person …".

60. The Umbrella Policy defines "property damage" in terms of "physical damage to or destruction of tangible property, including loss of use of this property …".

61. The Umbrella Policy defines "personal injury" as:

injury other than **bodily injury** arising out of one or more of the following offenses:

a. false arrest, false imprisonment, wrongful eviction, wrongful detention of a person;

b. abuse of process, malicious prosecution;

c. libel, slander, defamation of character; or

d. invasion of a person's right of private occupancy by physically entering into that person's personal residence.

62. The Umbrella Policy provides the following liability coverage exclusions:

**EXCLUSIONS**

There is no coverage under this policy for any:

6. **loss** arising out of any insured's **business property** or **business** pursuits of any **insured**, unless:

   a. (1) the **loss** does not involve any land motor vehicle or watercraft; and

      (2) **required underlying insurance** applies to the **loss** and provides coverage that pays for the **loss** in the amount shown as Minimum Underlying Limits on the declarations page …

14. **bodily injury** or **property damage** which is:

   a. either expected or intended by the **insured**; or

   b. the result of any willful and malicious act of the **insured** …

17. **personal injury** when the **insured** acts with specific intent to cause any harm.

63. The Umbrella Policy contains the following provisions imposing certain duties upon the insured:

**DUTIES AFTER LOSS**

In the event of a **loss** for which this policy may provide coverage, all **insureds** seeking coverage must:

1.   Immediately notify **us** of such **loss**. The notice must give **us**:

    a.   reasonably available information on the time, place and circumstances of the **loss**; and

    b.   names and addresses of any claimants and witnesses; and

    c.   the name of the insurer and identification number of any other policy providing insurance;

2. immediately notify **us** and any other insurer providing insurance of any claim or suit filed against the **insured** and send **us** and such insurer every demand, notice, summons and other process received related to the claim or suit …

**The Medical Office Policy**

64.    State Farm issued the Medical Office Policy, policy no. 96-42-3860-4, effective from August 18, 2015 until May 27, 2016., designating John C. Wiger, DDS as a "Named Insured." **Ex. 3**.

65.    Coverage under the Medical Office Policy was terminated at the request of Dr. Wiger effective 12:01 AM on May 27, 2016.

66.    The Medical Office Policy has a Coverage L - Business Liability limit of $1,000,000.

67.    The Medical Office Policy was issued in Virginia.

68.    The Medical Office Policy provides the following liability coverage:

**SECTION II**

**Coverage L – Business Liability**

1. When a Limit Of Insurance is shown in the Declarations for **Coverage L — Business Liability**, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured by counsel of our choice against

any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply …

2. This insurance applies …

    a. To "bodily injury" and "property damage" only if …

        1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        2) The "bodily injury" or "property damage" occurs during the policy period …

    b. To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period …

69. The Medical Office Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

70. The Medical Office Policy defines "bodily injury" in terms of "physical injury, sickness, or disease to a person …".

71. The Medical Office Policy defines "property damage" as:

    a. Physical injury to tangible property, including all resulting loss of use of that property … or

    b. Loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property …

72. The Medical Office Policy defines "personal  and advertising injury" as:

… injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy; The use of another's advertising idea in your "advertisement'; or

f. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

73.    The Medical Office Policy provides the following liability coverage exclusions:

**SECTION II - EXCLUSIONS**

Applicable to **Coverage L – Business Liability**, this insurance does not apply to:

1. **Expected Or Intended Injury**

    a. "Bodily injury" or "property damage" expected or intended to cause harm as would be expected by a reasonable person; or

    b. "Bodily injury" or "property damage" which is the result of willful and malicious, or criminal acts of the insured …

17. **Personal And Advertising Injury**

    a. Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

    b. Arising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity …

    k. Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control …

    n. Arising out of a criminal act committed by or at the direction of the insured …

74.    The Medical Office Policy contains the following provisions imposing certain duties upon the insured:

**SECTION II – GENERAL CONDITIONS** …

3. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a.  You must see to it that we are notified as soon as practicable of an occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1)  How, when and where the "occurrence" or offense took place;

   (2)  The names and addresses of any injured persons and witnesses; and

   (3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.  If a claim is made or "suit" is brought against any insured, you must:

   (1)  Immediately record the specifics of the claim or "suit" and the date received; and

   (2)  Notify us as soon as practicable.

   You must also see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.  You and any other involved insured must:

   (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" …

4.  **Legal Action Against Us**

No person or organization has a right under this policy …

b.  To sue us on this policy unless all of its terms have been fully complied with.

**Actual Controversy**

75.    There is an actual controversy between State Farm and the defendant as to whether the Homeowners Policy, Umbrella Policy and/or Medical Office Policy provide Dr. Wiger coverage for the Underlying Lawsuit.  State Farm has identified several reasons why the policies do not provide coverage.  In the event coverage is found to exist, State Farm may be under a duty to defend Dr. Wiger in the ongoing litigation of the Underlying Lawsuit.  A controversy therefore exists that is ripe for adjudication.

**<u>COUNT ONE</u>**

**Failure to Give Notice (All Policies)**

76.     State Farm hereby re-alleges the allegations contained in the above paragraphs.

77.     The Homeowners Policy, the Umbrella Policy and the Medical Office Policy all require that the insured provide immediate notice of an event that may trigger coverage under said policies.

78.     Compliance with this duty is a condition precedent to coverage under each of the insurance policies at issue.

79.     Dr. Wiger had knowledge of the events alleged in the Underlying Complaint no later than June 4, 2019.

80.     Dr. Wiger did not notify State Farm of these events before May 15, 2020.

81.     Dr. Wiger failed to comply with his duty to provide timely notice to State Farm of the matters alleged in the Underlying Complaint.

82.     Dr. Wiger's failure to provide notice of the matters alleged in the Underlying Complaint constitutes a substantial and material breach of his duties under the Homeowners Policy, the Umbrella Policy, and/or the Medical Office Policy.

83.     Dr. Wiger is therefore not entitled to coverage under the Homeowners Policy, the Umbrella Policy, and/or the Medical Office Policy for the matters alleged in the Underlying Complaint.

84.     State Farm is entitled to a declaration that neither the Homeowners Policy, the Umbrella Policy or the Medical Office Policy afford Dr. Wiger any coverage and that State Farm has no duty to defend or indemnify Dr. Wiger in the Underlying Lawsuit.

## COUNT TWO

### Failure to Forward Pleadings (All Policies)

85.     State Farm hereby re-alleges the allegations contained in the above paragraphs.

86.     The Homeowners Policy, the Umbrella Policy, and the Medical Office Policy all require that the insured promptly forward demands, notices, summonses, legal papers or other process received in any litigation arising out of any event for which the insured seeks coverage.

87.     Compliance with this duty is a condition precedent to coverage under each of the insurance policies at issue.

88.     Dr. Wiger received the Underlying Complaint no later than June 4, 2019.

89.     Dr. Wiger received additional demands, notices, summonses, legal papers or other process in the Underlying Lawsuit as set forth above.

90.     Dr. Wiger did not forward the Underlying Complaint or any other demands, notices, summonses, legal papers or other process related to the Underlying Lawsuit to State Farm before May 15, 2020.

91.     Dr. Wiger's failure to promptly forward demands, notices, summonses, legal papers or other process received constitutes a substantial and material breach of his duties under the Homeowners Policy, the Umbrella Policy and/or the Medical Office Policy.

92.     Dr. Wiger is therefore not entitled to coverage under the Homeowners Policy, the Umbrella Policy and/or the Medical Office Policy for the matters alleged in the Underlying Complaint.

93.     State Farm is entitled to a declaration that neither the Homeowners Policy, the Umbrella Policy or the Medical Office Policy afford Dr. Wiger any coverage and that State Farm has no duty to defend or indemnify Dr. Wiger in the Underlying Lawsuit.

## COUNT THREE

### The Homeowners Policy Provides no Coverage for the Matters Alleged in the Underlying Complaint

94.     State Farm hereby re-alleges the allegations contained in the above paragraphs.

95.     The insuring agreement of the Homeowners Policy extends coverage only for "bodily injury" or "property damage" that is caused by an "occurrence."

96.     The Underlying Complaint does not allege that any person sustained any "physical injury, sickness, or disease to a person …", and therefore does not allege any "bodily injury" as that term is defined in the Homeowners Policy.

97.     The Underlying Complaint does not allege that any tangible property sustained "physical damage" or was destroyed and therefore does not allege any "property damage," as that term is defined in the Homeowners Policy.

98.     The Underlying Complaint alleges intentional nonaccidental conduct on the part of Dr. Wiger, and therefore does not allege an "occurrence," as that term is defined in the Homeowners Policy.

99.     Because the Underlying Complaint does not allege either "bodily injury" or "property damage" resulting from an "occurrence," the requirements of the insuring agreement of the Homeowners Policy are not satisfied and no coverage is available to Dr. Wiger under said policy for the Underlying Lawsuit.

100.    The Underlying Complaint alleges that Dr. Wiger intended the harm and injuries inflicted by his conduct, and coverage for any "bodily injury" or "property damage" caused by his conduct is negated by Exclusion 2a of the Homeowners Policy, which states that there is no coverage for "**bodily injury** or **property damage** which is either expected or intended by the **insured**."

101.    The Underlying Complaint alleges that Dr. Wiger's conduct was a business pursuit, and any coverage for "bodily injury" or "property damage" caused by his conduct is negated by Exclusion 2b of the Homeowners Policy, which states that there is no coverage for "**bodily injury** or **property damage** arising out of **business** pursuits of any **insured** …"

102.    Dr. Wiger is therefore not entitled to coverage under the Homeowners Policy for the matters alleged in the Underlying Complaint.

103.    State Farm is entitled to a declaration that the Homeowners Policy affords Dr. Wiger no coverage and that State Farm has no duty to defend or indemnify Dr. Wiger in the Underlying Lawsuit.

## COUNT FOUR

### The Umbrella Policy Provides No Coverage for the Matters Alleged in the Underlying Complaint

104.    State Farm hereby re-alleges the allegations contained in the above paragraphs.

105.    The Underlying Complaint does not allege that any person sustained any "physical injury, sickness, or disease to a person …", and therefore does not allege any "bodily injury" as that term is defined in the Umbrella Policy.

106.    The Underlying Complaint does not allege that any tangible property sustained "physical damage" or was destroyed and therefore does not allege any "property damage," as that term is defined in the Umbrella Policy.

107.    The Underlying Complaint alleges intentional nonaccidental conduct on the part of Dr. Wiger, and therefore does not allege an "loss" with regard to "bodily injury" or "property damage," as those terms are defined in the Umbrella Policy.

108.    The Underlying Complaint alleges that Dr. Wiger intended the harm and injuries inflicted by his conduct, and coverage for any "bodily injury" or "property damage" caused by

his conduct is negated by Exclusion 14a of the Umbrella Policy, which states that there is no coverage for "**bodily injury** or **property damage** which is either expected or intended by the **insured**."

109.    The Underlying Complaint alleges that the harm and injuries inflicted by Dr. Wiger was the result of his willful and malicious conduct, and coverage for any "bodily injury" or "property damage" caused by his conduct is negated by Exclusion 14b of the Umbrella Policy, which states that there is no coverage for "**bodily injury** or **property damage** which is the result of any willful and malicious act of the **insured**."

110.    The Underlying Complaint alleges that Dr. Wiger's conduct was a business pursuit, and any coverage for "bodily injury" or "property damage" caused by his conduct is negated by Exclusion 6 of the Umbrella Policy, which states that there is no coverage for "**bodily injury** or **property damage** arising out of any … **business** pursuits of any **insured** …"

111.    The Underlying Complaint alleges that Dr. Wiger specifically intended the harm caused by his defamatory statements and other conduct, and any coverage for "personal injury," as that term is defined by the Umbrella Policy, is negated by Exclusion 17, which negates coverage for "**personal injury** when the **insured** acts with specific intent to cause any harm."

112.    Dr. Wiger is therefore not entitled to coverage under the Umbrella Policy for the matters alleged in the Underlying Complaint.

113.    State Farm is entitled to a declaration that the Umbrella Policy affords Dr. Wiger no coverage and that State Farm has no duty to defend or indemnify Dr. Wiger in the Underlying Lawsuit.

## COUNT FIVE

### The Medical Office Policy Provides No Coverage for the Matters Alleged in the Underlying Complaint

114.     State Farm hereby re-alleges the allegations contained in the above paragraphs.

115.     The Underlying Complaint does not allege that any person sustained any "physical injury, sickness, or disease to a person …", and therefore does not allege any "bodily injury" as that term is defined in the Medical Office Policy.

116.     The Underlying Complaint does not allege that any tangible property sustained "physical injury" or was destroyed and therefore does not allege any "property damage" as that term is defined in the Medical Office Policy.

117.     The Underlying Complaint alleges intentional nonaccidental conduct on the part of Dr. Wiger, and therefore does not allege an "occurrence" with regard to "bodily injury" or "property damage, as those terms are defined in the Medical Office.

118.     The Underlying Complaint fails to alleged any "bodily injury," "property damage" or "personal and advertising injury" occurring during the "policy period" as required in order for there to be coverage under the Medical Office Policy.

119.     The Underlying Complaint alleges that Dr. Wiger intended the harm and injuries inflicted by his conduct, and coverage for any "bodily injury" or "property damage" caused by his conduct is negated by Exclusion 1a of the Medical Office Policy, which states that there is no coverage for "**bodily injury** or **property damage** which is either expected or intended by the **insured**."

120.     The Underlying Complaint alleges that the harm and injuries inflicted by Dr. Wiger was the result of his willful and malicious conduct, and coverage for any "bodily injury" or "property damage" caused by his conduct is negated by Exclusion 1b of the Medical Office

Policy, which states that there is no coverage for "**bodily injury** or **property damage** which is the result of any willful and malicious act of the **insured**."

121.    The Underlying Complaint alleges that Dr. Wiger engaged in conduct with the knowledge that such acts would violate the rights of another person and would inflict "personal and advertising injury," so that any coverage under the Medical Office Policy would be negated by Exclusion 17a, which states there is no coverage for any "personal or advertising injury … [c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

122.    The Underlying Complaint alleges that Dr. Wiger intentionally published information he knew to be false with the intention of causing harm to Top Nova and/or Dr. Abassi, so that any coverage under the Medical Office Policy would be negated by Exclusion 17c, which states that there is no coverage for "personal and advertising injury … [a]rising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity …".

123.    The Underlying Complaint alleges that Dr. Wiger committed defamation by means of an "online forum" that he owned or controlled, so that so that any coverage under the Medical Office Policy would be negated by Exclusion 17k, which states that there is no coverage for "personal and advertising injury … [a]rising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control …".

124.    The Underlying Complaint alleges Dr. Wiger committed a violation of a criminal statute, Va. Code §18.2-499, and coverage for any resulting "personal and advertising injury" under the Medical Office Policy would be negated by Exclusion 17n, which states that there is

no coverage for "personal and advertising injury … [a]rising out of a criminal act committed by or at the direction of the insured …".

125.    Dr. Wiger is therefore not entitled to coverage under the Medical Office Policy for the matters alleged in the Underlying Complaint.

126.    State Farm is entitled to a declaration that the Medical Office Policy affords Dr. Wiger no coverage and that State Farm has no duty to defend or indemnify Dr. Wiger in the Underlying Lawsuit.

## REQUEST FOR RELIEF

WHEREFORE, State Farm respectfully prays that this Court enter an Order declaring that State Farm owes Dr. John C. Wiger, DDS, no duties or obligations under the Homeowners Policy, the Umbrella Policy and/or the Medical Office Policy with respect to the matters alleged in the Underlying Lawsuit, including any duty to defend or indemnify Wiger for the claims alleged in the Complaint of the Underlying Lawsuit, and award such other and further relief as the Court deems appropriate.

Respectfully Submitted,

STATE  FARM  FIRE  &  CASUALTY COMPANY

By:    _/s/ Guy M. Harbert, III_____
                        Counsel

Guy M. Harbert, III (VSB No. 22933)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
P.O. Box 40013
Roanoke, Virginia 24022-0013
Phone: (540) 983-9300; Fax: (540) 983-9400
Email: harbert@gentrylocke.com
  *Counsel for Plaintiff*